# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

NARCISO TORRES,

    Petitioner,

vs.

BILL DONAT, et al.,

    Respondents.

Case No. 3:08-CV-00291-RCJ-(VPC)

**ORDER**

Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#6), respondents' answer (#18), and petitioner's reply (#25).[1] The court finds that petitioner is not entitled to relief, and the court denies the petition.

In the Second Judicial District Court of the State of Nevada, Case No. CR04-1447, petitioner was charged with two counts of trafficking in a controlled substance.[2] Ex. 16 (#19). A jury found him guilty on both counts. Ex. 48 (#20). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 71 (#20).

Petitioner then filed a post-conviction petition for a writ of habeas corpus and a supplement in the state district court. Ex. 74, 78 (#20). The state court appointed counsel and conducted an evidentiary hearing. Ex. 101 (#20). The state court then denied the petition. Ex. 89 (#20).

---

[1] Petitioner also submitted an unauthorized supplement to his reply (#28). The court will strike that document.

[2] At the time of petitioner's arrest in the case at issue, he was facing a count of trafficking in another case, CR04-0842. Petitioner pleaded guilty to the charge in CR04-0842. Respondents have provided relevant documents from that case as part of their exhibits (#19, #20).

Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 106 (#20). Petitioner then commenced this action.

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

"Rule 7 of the Rules Governing § 2254 cases allows the district court to expand the record without holding an evidentiary hearing." Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th Cir. 2005). The requirements of § 2254(e)(2) apply to a Rule 7 expansion of the record, even without an evidentiary hearing. Id. "An exception to this general rule exists if a Petitioner exercised diligence in his efforts to develop the factual basis of his claims in state court proceedings." Id.

-2-

Ground 1 is a claim that there was insufficient evidence to support the verdicts of guilty on both counts. "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979) (citing In re Winship, 397 U.S. 358 (1970)). On federal habeas corpus review of a judgment of conviction pursuant to 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson, 443 U.S. at 324. "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Id. at 324 n.16. "[I]t is the exclusive province of the jury, to decide what facts are proved by competent evidence. It was also their province to judge of the credibility of the witnesses, and the weight of their testimony, as tending, in a greater or less degree, to prove the facts relied on." Ewing's Lessee v. Burnet, 36 U.S. (11 Pet.) 41, 50-51 (1837). Petitioner raised this claim on direct appeal. The Nevada Supreme Court held:

> Torres contends that the evidence presented at trial was insufficient to support the jury's finding of guilt. Our review of the record on appeal, however, reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact.
>
> In particular, we note that an undercover detective told an individual named Roger Wolf that he wanted to buy an ounce of methamphetamine. Wolf left the immediate vicinity and returned a few moments later in a vehicle registered to and driven by Torres. Wolf emerged from Torres' car and gave the detective the drugs in exchange for $900, and then walked back to Torres' car. Upon a signal from the detective, police officers stopped Torres before he drove out of the parking lot where the transaction occurred. When the officers stopped Torres, he had the $900 in his hand, and officers discovered another ounce of methamphetamine under the driver's seat.
>
> The jury could reasonably infer from the evidence presented that Torres was guilty of two counts of trafficking. It is for the jury to determine the weight and credibility to give conflicting testimony, and the jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict.

Exhibit 71, pp. 1-2 (#20) (footnotes omitted). The court has reviewed the transcript of the trial, and the Nevada Supreme Court's ruling is an accurate summary of the facts. See Ex. 44 (#20).[3]

---

[3] In addition to the facts summarized by the Nevada Supreme Court, the detective testified that Wolf first tried to call his source for the methamphetamine on the detective's mobile telephone. The call was not answered and was routed to voice mail, and Wolf left the detective to call the source on a pay telephone. Ex. 44, p. 48 (#20). After petitioner was arrested, the detective called the number that Wolf had dialed. A mobile telephone in petitioner's car then rang, and the caller ID

Petitioner complains that Roger Wolf is a tainted witness, because he has a criminal history and because he pleaded guilty to reduced charges in this matter. However, the Nevada Supreme Court's summary of the facts is told entirely from the perspective of the police officers who testified at trial; the summary does not rely upon Wolf's testimony.

Petitioner faced two counts of trafficking in a controlled substance. The relevant statute states:

> Except as otherwise authorized by the provisions of NRS 453.011 to 453.552, inclusive, <u>a person who knowingly or intentionally sells, manufactures, delivers or brings into this State or who is knowingly or intentionally in actual or constructive possession</u> of flunitrazepam, gamma-hydroxybutyrate, any substance for which flunitrazepam or gamma-hydroxybutyrate is an immediate precursor or any controlled substance which is listed in schedule I, except marijuana, or any mixture which contains any such controlled substance, shall be punished, unless a greater penalty is provided pursuant to NRS 453.322, if the quantity involved:
>
> 1.   Is 4 grams or more, but less than 14 grams, for a category B felony by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 6 years and by a fine of not more than $50,000.
>
> 2.   Is 14 grams or more, but less than 28 grams, for a category B felony by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years and by a fine of not more than $100,000.
>
> 3.   <u>Is 28 grams or more, for a category A felony by imprisonment in the state prison</u>:
>
> (a)   For life with the possibility of parole, with eligibility for parole beginning when a minimum of 10 years has been served; or
>
> (b)   For a definite term of 25 years, with eligibility for parole beginning when a minimum of 10 years has been served,
>
> and by a fine of not more than $500,000.

Nev. Rev. Stat. § 453.3385 (emphasis added). Count 1 concerned the transaction through Wolf of the ounce of methamphetamine for $900; count 2 concerned the ounce of methamphetamine that was underneath the driver's seat of petitioner's car.[4] <u>See</u> Ex. 16 (#19).

---

indicated that it was the detective's phone calling. <u>Id.</u>, p. 60.

[4] The actual net weights of the methamphetamine packages were 28.23 grams and 28.09 grams. Ex. 44, p. 128 (#20). Each package was sufficient for a conviction pursuant to § 453.3385(3), also known as level-three trafficking. This court, like witnesses at trial and the state courts, will refer to the weights of the packages by the rough equivalent of one ounce.

-4-

With regard to count 1, petitioner argues unpersuasively that detectives saw no exchange of methamphetamine and money between Wolf and petitioner, and that they were relying upon Wolf's version of events. However, direct eyewitness testimony is not necessary for a conviction. Circumstantial evidence also can allow a conviction. See Ex. 46, Instruction 4 (#20). The detective gave Wolf $900 in pre-recorded money[5] in exchange for an ounce of methamphetamine. Wolf went to petitioner's car and then returned to the detective. The detective separated himself from Wolf, saying that he needed to get his girlfriend, and other officers arrested Wolf and petitioner. Ex. 44, pp. 52-53 (#44). Another detective found the $900 in pre-recorded money in petitioner's hand. Id., pp. 116-17 (#44). With such circumstantial evidence, a jury cold infer that Wolf and petitioner exchanged the methamphetamine for the money.

With regard to count 2, petitioner argues unpersuasively that although he told the detectives that there was an ounce of methamphetamine under the driver's seat of his car, he did not tell the officers that the methamphetamine was his or that he had put it there. Again, circumstantial evidence would allow the jury to infer that petitioner had constructive possession of the methamphetamine. See Ex. 46, Instructions 14-15 (#20).

The Nevada Supreme Court reasonably applied Jackson when it held that a jury could infer from the evidence presented at trial that petitioner had committed the first count of trafficking. 28 U.S.C. § 2254(d)(1). Reasonable jurists would not find this conclusion to be debatable or wrong, and the court will not issue a certificate of appealability on ground 1.

Ground 2 is a claim that petitioner received ineffective assistance of his trial counsel, Bruce Voorhees. Voorhees was not the first attorney to represent petitioner in CR04-1447. In the state post-conviction proceedings, the state district court explained the history of petitioner's representation by counsel:

> 2.   Following arrest, the Washoe County Public Defender was appointed to defend Torres. At that time, however, the Public Defender was already defending Torres' co-

---

[5] The detective explained pre-recording: "Each time we do a controlled purchase for drugs we record our money by photocopying it. The serial numbers are visible on the photocopies. In the future, when we recover our buy money, that's what we call it, we can compare the money to the photocopies." Ex. 44, p. 43 (#20).

        defendant, Roger Wolf. As a result of the conflict, Jenny Hubach was appointed to represent Torres. During this period of time, Torres was bound over for trial on two counts of Trafficking in a Controlled Substance (Methamphetamine); he was also arraigned, pleaded not guilty, and his case was set for trial on June 20, 2005. Hubach's performance is not an issue in this case.

        3.     On June 9, 2005, approximately 17 days prior to trial, Bruce Voorhees took the case over from Hubach. Owing to his training and experience, Voorhees was well qualified to defend Torres.

Ex. 89, pp. 1-2 (#20).

"[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel <u>per se</u>, but rather a fair proceeding with a reliable outcome. See <u>Strickland</u>, 466 U.S. at 691-92. See also <u>Jennings v. Woodford</u>, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. <u>Strickland</u>, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. <u>Id.</u> at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>

The Nevada Supreme Court simply affirmed the decision of the state district court. Ex. 106 (#20). Consequently, this court will "look through" the Nevada Supreme Court's summary decision to the decision of the state district court to determine whether the denial of the state habeas corpus petition was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States. See <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 806 (1991).

First, petitioner claims that Voorhees did not investigate the case. On this issue, the state district court held:

> 4. Prior to trial, Voorhees, with the aid of a competent investigator, conducted a reasonably complete investigation of the case, including applicable defenses. Following this investigation, Voorhees and Torres settled on a mere presence defense, and otherwise challenge the elements of the charges. The strategy was reasonable under prevailing professional norms.
>
> a. Voorhees did not, however, consult with nor hire an expert to challenge the State's claim that the drugs in question weighed 28 grams or more. Torres failed to present any evidence proving or tending to prove that this omission was unreasonable under prevailing professional norms. In addition, Torres failed to prove that the drugs actually weighed less than claimed. As a result, Torres was not prejudiced by counsel's failure to use an expert.
>
> b. Voorhees testified credibly that he conducted a reasonably complete investigation of Wolf, who would be a prosecution witness, following a plea bargain. Despite Torres' claim that Voorhees failed to sufficiently investigate Wolf's incentives to testify for the State, Torres failed to establish exactly what the omitted investigation would uncover. Moreover, since Wolf did not testify in the habeas proceeding, the Court is not in a position to say whether or if Wolf could have been effectively impeached with any new, but omitted impeachment material. Consequently, Torres failed to prove Voorhees alleged omission was unreasonable or prejudicial.

> c.      Although Voorhees did not file a motion for discovery, Torres failed to prove that that omission was objectively unreasonable in this case. Voorhees testified credibly that he had an open file with the prosecutor, and received the discovery materials Hubach had acquired. Under these circumstances, Voorhees' failure to file a motion for discovery was not objectively unreasonable. Torres also failed to establish prejudice from the lack of the motion, because he failed to prove just what discoverable material Voorhees did not acquire, which, had it been acquired, would have created a reasonable probability of a different outcome.

Ex. 89, pp. 2-3 (#20). Petitioner argues in his reply (#25) that there was nothing in the record other than Voorhees' testimony that proved that he investigated a case. However, the state district court determined that it believed Voorhees. Those findings are a reasonable determination of fact in light of the testimony presented at the evidentiary hearing. 28 U.S.C. § 2254(d)(2). See also Ex. 101 (#20), Transcript,[6] pp. 6-7 (determined that re-weighing drugs would not be fruitful), 7-8 (investigator spoke with Wolf and arresting officers before trial), 9 (testified that the prosecution's open-file policy made discovery motions moot, and he did receive the discovery requested by petitioner's prior counsel), 10 (investigated Wolf's incentives to testify, including the reason behind the suspension of his sentence and placement on probation). Under those circumstances, the district court reasonably applied Strickland. 28 U.S.C. § 2254(d)(1).

Next, petitioner claims that Voorhees failed to raise timely objections. Petitioner does not allege in the petition (#6) what objections Voorhees should have raised. The issue was developed in the evidentiary hearing in state court, and that court held:

> [5.]e.   During the trial, Voorhees did not object to questions Torres now claims were leading. The Court has examined those questions, and finds that the lack of objection was not unreasonable in this case. The Court further finds that even if the objections were made and sustained, there is no reasonable probability that the result of the trial would have been different.
>
> f.      During the trial, Voorhees did not object to comments made by the prosecutor, which Torres now claims amount to prosecutorial misconduct. The Court has examined those comments, and finds that the lack of an objection was not unreasonable in this case. The Court further finds that even if the objections were made and sustained, there is no reasonable probability that the result of the trial would have been different.

---

[6] Exhibit 101 is the joint appendix on appeal from the denial of the state habeas corpus petition. The transcript of the evidentiary hearing is at pages 35-71 of that appendix. However, the court will refer to the page numbers of the transcript itself.

-8-

Ex. 89, p. 4 (#20). On objecting to leading questions, Voorhees testified that many of the leading questions led to answers that were not important, and he did not want to annoy the jury with constant objections. Ex. 101 (#20), Transcript, pp. 26-27. Like the state court, this court has reviewed the questions at issue in the trial transcript. The state court's determination that sustained objections would not have led to a different result was a reasonable application of <u>Strickland</u>. On comments by the prosecutor, the issue was whether Voorhees should have objected to the prosecutor's statements about reasonable doubt in the opening statement. <u>Id.</u>, p. 22. The prosecutor said, "Your job again is whether the elements of the crime are proven beyond a reasonable doubt." Ex. 44, p. 32 (#20). That is not an objectionable statement. The state district court applied <u>Strickland</u> reasonably.

Next, petitioner claims that Voorhees did not object to the lack of corroboration of Wolf's testimony. On this issue, the state district court held:

> [5.]c.   To the extent that Torres alleged that Voorhees failed to challenge the lack of evidence corroborating Wolf's testimony, the Court finds that Wolf's testimony was corroborated. Torres, it will be remembered among other things, had all the prerecorded buy money from the sale in his pocket, and he was in constructive possession of the other ounce of methamphetamine. Hence, Wolf's testimony was amply corroborated.

Ex. 89, p. 3 (#20). Wolf's testimony was consistent with the testimony of the police officers described in ground 1; furthermore, as the state district court noted, the circumstantial evidence also corroborated Wolf's testimony. An objection to the lack of corroboration would have failed. The state district court reasonably applied <u>Strickland</u>. 28 U.S.C. § 2254(d)(1).

Next, petitioner claims that Voorhees did not show that Wolf was actually the more culpable party. Petitioner alleges:

> Trial counsel failed to develop whether Mr. Wolf had petitioner merely holding the controlled substance for Mr. Wolf, or if Petitioner had even less involvement. No one saw Mr. Wolf obtain the drugs from Petitioner. Petitioner's fingerprints were not on the packaging for the controlled substance, Petitioner received the more severe sentence for being the primary trafficker, when in fact, Mr. Wolf set up the deal, made the transaction, brought the drugs to the [site] of the sale, but when caught, pointed the finger at Petitioner as the main perpetrator in order for Mr. Wolf to cut himself a favorable deal and make the jury believe Petitioner to be the main culprit in the sale.

Petition, pp. 5-5A (#6). Wolf testified that he received a call from a person who, unknown to him, was a confidential informant; she asked if Wolf could provide an ounce of methamphetamine to her

-9-

friend who, again unknown to him, was an undercover detective. Ex. 44, p. 90. Wolf then testified that he called petitioner and ordered an ounce of methamphetamine. Id., pp. 91-93. Wolf's recollection of the meeting with the undercover detective is largely consistent with the detective's testimony. Id., p. 94. Wolf then testified that he left the detective, met with petitioner at another location, and went with petitioner in petitioner's car to the detective's location. Id., pp. 95-97. Wolf testified that petitioner gave him an ounce of methamphetamine, which Wolf then took to the detective. The detective gave Wolf $900 for the methamphetamine, which Wolf took back to petitioner, and the detective gave Wolf $20 for Wolf's part in the transaction. Id., pp. 96-98. Wolf then returned to the detective, and the detective walked away from Wolf, saying that he needed to get his girlfriend. Officers then arrested Wolf. Id., p. 98.

The record does not support petitioner's claim. Voorhees did cross-examine Wolf about the transaction. Voorhees brought attention to an inconsistency between Wolf's testimony and the detective's testimony as to whether Wolf told the detective that Wolf had the methamphetamine in his possession or that Wolf could obtain the methamphetamine, but Wolf did not depart from his recollection of events. Ex. 44, pp. 104-07 (#20). Then, contrary to petitioner's claim, Voorhees did try to develop that Wolf was more involved in the trafficking than Wolf's direct testimony had indicated. The following exchange in cross-examination is telling:

> Q   And so you're doing this setting up this deal out of the goodness of your heart, because Mr. Torres isn't giving you anything?
>
> A   Mr. Torres indicated to me a couple of days earlier that he need to get rid of some.
>
> Q   Pardon?
>
> A   He indicated to me a couple of days earlier that he needed to get rid of some.
>
> Q   And there's no promises form Mr. Torres that he's going to give you an—[7]
>
> A   No, sir.
>
> Q   And no deal, promises or anything that he's going to give you a portion of some methamphetamine?

---

[7] A hole punched for binding purposes in the original copy of the transcript has obliterated the rest of the question.

-10-

| | | |
|---|---|---|
| 1 | A | No, sir. |
| 2 | Q | So you're basically getting absolutely nothing from Mr. Torres? |
| 3 | A | Correct. |
| 4 | Q | And you set this deal up with the hopes that the purchaser's going to give you something, money or drugs? |
| 5 | A | Yes, sir. |
| 6 | Q | And that's it? |
| 7 | A | That's it. |

Ex. 44, pp. 107-08 (#20). Again, Wolf did not depart from his recollection of events. Petitioner does not allege what else Voorhees could have done. The record does not indicate that Voorhees' performance was deficient, and this claim is without merit.

Next, petitioner claims that Voorhees failed to impeach the testimony of Wolf. As noted above, police arrested Wolf at the same time that they arrested petitioner. Before petitioner's trial occurred, Wolf agreed to plead guilty to one count of lower-level trafficking. He received a suspended sentence and was placed on probation. By the time of petitioner's trial, Wolf was back in custody for a violation of his probation, and he was about to go before the same judge for a probation-revocation hearing. On this issue, the state district court ruled:

> [5.]a. Despite Torres' claim to the contrary, the Court finds that Voorhees['] efforts to impeach Wolf's testimony were objectively reasonable in this case. In addition, Torres failed to identify with any specificity what question, or line of questioning, Voorhees should have deployed. And finally, as noted, Wolf did not testify [at the evidentiary hearing]. Consequently, even if some line of questioning could have been used by Voorhees, and assuming a reasonably competent lawyer would have used it, Torres failed to prove that Wolf would have been impeached, or, if impeached, the result of the trial would have been different.

Ex. 89, p. 3 (#20). In his cross-examination of Wolf, Voorhees inquired into the reduced charges, and probation, that Wolf received in exchange for pleading guilty. Ex. 44, pp. 99-100 (#20). Voorhees inquired into Wolf's history of felony criminal convictions. Id., pp. 100-02. Voorhees inquired into Wolf's use of many aliases. Id., pp. 102-03. In his closing argument, Voorhees noted Wolf's prior problems with crime and use of aliases. He also argued that Wolf, facing revocation of his probation, had an incentive to testify in the hope that the judge, who would be the same judge

-11-

1  that presided over the trial, would be lenient. Id., pp. 191-92. Contrary to petitioner's argument,
2  counsel did impeach Wolf, and petitioner has not identified any other matters into which counsel
3  could have inquired. Under these circumstances, the state court reasonably applied Strickland. 28
4  U.S.C. § 2254(d)(1).

5   Finally in ground 2, petitioner claims that Voorhees did not bring out that no detective saw
6  Wolf obtain the methamphetamine from the petitioner. The record belies this claim. Voorhees did
7  argue to the jury that detectives did not hear any conversation between Wolf and petitioner, nor did
8  they see any transactions between Wolf and petitioner in petitioner's car. Ex. 44, pp. 188-91 (#20).
9  On the other hand, strong circumstantial evidence, described above with respect to ground 1,
10 indicated that petitioner did give methamphetamine to Wolf in exchange for money. Because
11 Voorhees did what petitioner claims that he should have done, Voorhees did not perform
12 deficiently, and this part of ground 2 is without merit.

13  Reasonable jurists would not find this court's disposition of ground 2 to be debatable or
14 wrong, and the court will not issue a certificate of appealability.

15  Ground 3 is a claim of ineffective assistance of trial counsel regarding count 2, the ounce of
16 methamphetamine found under the driver's seat in petitioner's car. Petitioner claims that Voorhees
17 presented no defense to this count. This issue was litigated in the state district court, which held:

> [5.]b.  To the extent that Torres alleged that Voorhees failed "to put up any defense," the Court finds that that claim is repelled by the record. As noted above, Voorhees and Torres settled on a mere presence defense and mounting a challenge to the State's burden of proof. Torres presented no evidence proving or tending to prove that this strategy was unreasonable in the case.

21 Ex. 89, p. 3 (#20). Voorhees argued to the jury:

> But Count II, the drugs were under the seat. Mr. Torres said, hey, there's another—I don't remember the exact phrase. You have to use your memories for recollection on this. I don't know if he said there's another ounce or there's more drugs underneath the seat. I know he indicated that they were under the seat. I don't know exact terminology, but that's up to you.
>
> He never said that it was his. He never said he put it there. And, once again, we don't have any fingerprints. Nobody looked for fingerprints. And I would submit that knowledge in and of itself is not the equivalent of guilt. There's other circumstances that would have to be taken into consideration and that's for you to decide.

27 Ex. 44, pp. 192-93 (#20). In light of that argument, the state district court reasonably applied
28 Strickland. 28 U.S.C. § 2254(d)(1).

1    Petitioner also claims that counsel should have objected to the verdict. It is unclear what
2 petitioner means by this. He states, "Under the Sixth Amendment, counsel appointed to defend a
3 client facing 10 to 25 years in prison for trafficking for having an ounce of meth under the seat of
4 his vehicle, <u>with nothing more to indicate trafficking</u>, deserves at least an objection to a verdict that
5 does not rise to the level of reasonable doubt." Petition, p. 7A (#6) (emphasis added). Trafficking,
6 as defined by Nev. Rev. Stat. § 453.3385, is not only a transaction involving a controlled substance.
7 Trafficking also can be the possession of more than a certain weight of controlled substance.
8 Voorhees did what petitioner argues he should have done, because on direct appeal Voorhees did
9 challenge the sufficiency of the evidence. As the court has noted with respect to ground 1, a jury
10 could infer from the existence of the ounce of methamphetamine underneath the driver's seat of
11 petitioner's car, along with petitioner's statement that he knew that ounce was there, that petitioner
12 constructively possessed that ounce of methamphetamine. This claim is without merit.
13    Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the
14 court will not issue a certificate of appealability for ground 3.
15    In ground 4, Petitioner claims that the Due Process Clause of the Fourteenth Amendment
16 was violated. He notes that at the end of the preliminary hearing, the justice of the peace bound him
17 over for trial on two counts of level-two trafficking, but the information charged him with level-
18 three trafficking. See Ex. 14, p. 19, Ex. 16 (#20). Petitioner has no right to a preliminary hearing.
19 <u>Ramirez v. Arizona</u>, 437 F.2d 119 (9th Cir. 1971). If charging petitioner with two counts of level-
20 three trafficking when the justice of the peace stated that petitioner was bound over for trial on two
21 counts of level-two trafficking violated any law, then it was a violation of state law. A violation of
22 state law is not addressable in federal habeas corpus unless the violation makes the proceedings
23 fundamentally unfair. <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991). As the court has held with
24 respect to ground 1, the evidence was sufficient for the jury to find petitioner guilty of both counts
25 of level-three trafficking. Consequently, the error had no effect on the proceedings that this court

can address in federal habeas corpus. Furthermore, even if counsel should have caught the error, petitioner suffered no prejudice from the lack of objection. Ground 4 is without merit.[8]

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 4.

Ground 5 is a claim that Voorhees provided ineffective assistance because he did not ask the court to instruct the jury on lesser included offenses. There are two ways to interpret this claim. In one interpretation, the state district court held:

> [5.]d.  When the lawyers met to settle jury instructions, Voorhees did not offer an instruction on any lesser offenses. The Court is not in a position to assess this claim because Torres failed to name the lesser offense on which he wished to have the jury instructed, and failed to prove that a reasonably competent lawyer would have bothered with a lesser offense instruction in this case, particularly where, as here, Torres asserted mere presence. But even assuming a lesser offense instruction had been offered and given, the Court is convinced that, in light of the overwhelming weight of the evidence proving level three trafficking, no reasonable probability exists that the result of the trial would have been different.

Ex. 89, pp. 3-4 (#20). Likewise, in ground 5 itself petitioner does not allege what offense could have been a lesser-included offense. The state district court was reasonable when it noted that counsel would not have bothered with an instruction on a lesser-included offense because he was pursuing a mere-presence defense. An argument to find petitioner guilty of a lesser-included offense would have undercut the defense that petitioner was merely present at the scene of the crime.

In another interpretation, Petitioner appears to argue that count two of the information was a lesser-included offense of count one, and thus he could not have been convicted of both counts. "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." Blockburger v. United States, 284

---

[8] The court agrees with respondents that, in all likelihood, the justice of the peace simply misspoke. In the criminal complaint, the prosecution charged petitioner with two counts of level-three trafficking. Ex. 4 (#19). After the end of the preliminary hearing, the justice of the peace certified "that there was probable cause and sufficient evidence to believe that the said defendant committed the said crimes as charged, he was therefore bound over to the District Court for trial." Ex. 14, p. 22 (emphasis added). The affidavit would have stated something different if the justice of the peace actually intended to bind petitioner over for trial on lesser charges.

U.S. 299, 304 (1932) (emphasis added). The two counts of trafficking refer to different acts or transactions. Count one refers to the ounce of methamphetamine given to the undercover police officer in exchange for $900. Count two refers to the ounce of methamphetamine found underneath the driver's seat in petitioner's car. Petitioner was not convicted twice for the same crime; he was convicted of two separate crimes. There was no double-jeopardy issue in petitioner's case, and a motion by counsel on that issue would have failed.

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 5.

Ground 6 is a claim that petitioner's sentence violates the Eighth Amendment because his co-defendant, Wolf, received a much lighter sentence. According to petitioner, "Through plea negotiations, the State reduced the charge against Mr. Wolf to one count of Trafficking in a Controlled Substance, level 2, with a sentence of imprisonment in the Nevada State Prison for a minimum term of twelve (12) months to a maximum term of sixty (60) months, suspended 48 months." The sentence that petitioner describes is actually consistent with level-one trafficking, and it is impossible for level-two trafficking, because the minimum term for level-two trafficking can be no less than 2 years. See Nev. Rev. Stat. § 453.3385. Regardless, petitioner's claim is without merit. Wolf agreed to plead guilty to reduced charges. Petitioner went to trial on the original charges, and the jury found him guilty of both counts.[9] The sentence that petitioner received for each count is within the statutory limit, and, as respondents correctly note, is the lesser of the two options. Petitioner's sentence is greater than Wolf's sentence because petitioner was convicted of more crimes and more serious crimes.

Reasonable jurists would not find the court's conclusions to be debatable or wrong, and the court will not issue a certificate of appealability for ground 6.

Petitioner has submitted a letter asking for a copy of the docket sheet (#32), and the court will grant that request.

---

[9] The court does not know what the original charges against Wolf were. As for petitioner, according to Voorhees, by the time he had become petitioner's counsel, the prosecution had withdrawn all offers. See Ex. 38, p. 8 (#19).

Petitioner has submitted a request for evidentiary hearing and appointment of counsel (#33, #34). These requests are moot because the court is denying the petition.

IT IS THEREFORE ORDERED that the clerk of the court shall **STRIKE** the supplement to the reply (#28).

IT IS FURTHER ORDERED that petitioner's request for a copy of the docket sheet (#32) is **GRANTED**. The clerk of the court shall send petitioner a copy of the docket sheet with this order.

IT IS FURTHER ORDERED that petitioner's request for evidentiary hearing and appointment of counsel (#33, #34) are **DENIED** as moot.

IT IS FURTHER ORDERED that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. The clerk of the court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

Dated: This 2nd day of August, 2011.

_____
ROBERT C. JONES
Chief United States District Judge